**In re CGI INDUSTRIES, INCORPORAT-ED formerly known as Creative Glass-works International, Incorporated, Debt-or–Appellant.**

No. 93–1939.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1993.

Decided June 20, 1994.

Richard E. Barber, pro se.

U.S. Trustee, Peoria, IL.

Joseph E. Schmall, Donald Guy Thompson (argued), Bradley & Riley, Cedar Rapids, IA, for appellee.

John F. Doak, Philip E. Koenig (argued), Katz, McAndrews, Balch, Lefstein & Fieweger, Rock Island, IL, for debtor-appellant.

Before LAY,* COFFEY, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This case requires us to decide whether an appeal challenging the bankruptcy court's approval of a sale was rendered moot due to the appellants' failure to obtain a stay in advance of the sale. At the appellants' request, the bankruptcy court eventually did enter a stay pending appeal, but only after the sale had already been executed and after the time for appeal had expired. The district court deemed that too late, vacated the stay, and dismissed the appeal of the sale order as moot. Because the appellants failed to obtain a stay before the sale was completed, we agree that their challenge to the bankruptcy court's decision was moot and affirm the district court.

## I. FACTS

CGI Industries, Incorporated ("CGI") petitioned for relief under Chapter 7 of the Bankruptcy Code on May 7, 1991. Among its assets was a potential cause of action for malpractice against its attorney, Philip E. Koenig, and Koenig's law firm, Katz, McAndrews, Balch, Lefstein & Fieweger, P.C. (collectively, "Katz").[1] Starmont Corporation ("Starmont"), one of CGI's shareholders, ap-

prised the trustee of CGI's estate of the nature of the malpractice claim and offered to buy it for $250. Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may ... sell, ... other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b); see In re Sax, 796 F.2d 994, 997 nn. 6–7 (7th Cir.1986). On May 27, 1992, in accordance with section 363(b), the trustee mailed a notice to the company's creditors and other interested parties reflecting his intent to accept the offer.

CGI objected to the sale, contending that the claim was invalid and that, in any event, a higher offer for the claim was pending. The bankruptcy court heard the objection on July 23, 1992, at which time Mr. Koenig revealed that he and his firm were prepared to offer $500 for the malpractice claim. The bankruptcy court declined to accept the higher bid, explaining:

> [W]hether there's a valid claim or not, I guess that has to be determined. And that would be determined if the person who ends up with the claim brings a suit and the Court rules. As far as the higher offer is concerned, Mr. Koenig, I don't think it would be appropriate that you be the bidder and use this court in order to cut off any potential claim that someone might have. I think that should—if there is a claim, it ought to be determined one way or the other. So I'm not going to let you bid, Mr. [Koenig]—there being no higher bid, Mr. Barber [the trustee], you can sell it for the amount indicated.

App. 23–24. On August 31, 1992, the bankruptcy court entered an order approving the sale of the claim to Starmont for $250. The sale was completed on September 4, 1992, when Starmont submitted payment to the trustee. Shortly thereafter, Starmont proceeded with the malpractice suit.

On September 9, 1992, CGI and Katz filed a notice of appeal.[2] On September 14, 1992,

---

* The Honorable Donald P. Lay, of the Eighth Circuit, sitting by designation.

1. The claim purportedly arose from Koenig's advice to CGI in connection with the September 1990 sale of the company's stock in Machine

Research Company, Inc. (along with certain other assets) to Scientific Investors, Inc.

2. Starmont asserts that both CGI and Katz lacked standing to appeal the bankruptcy court's order—CGI because (as the debtor) it stood to

they filed a motion for stay of the sale.[3] Starmont objected to the stay, pointing out that the motion was filed ten days after the sale had been completed and four days after the time for appeal of the order approving the sale had expired. After entertaining arguments on the motion on October 22, 1992, the bankruptcy court decided to grant the stay and entered an order to that effect eight days later. Starmont subsequently appealed from the stay. The two appeals were consolidated before the district court.

The district court vacated the stay and dismissed the appeal of CGI and Katz as moot. The court reasoned:

> [T]he deciding event was the completion of the sale on September 4, 1992, approximately five weeks after the Law Firm learned that it would not be allowed to bid on the claim. The Law Firm, however, did not file its motion to stay until 10 days after the sale had been completed, and 14 days after the sale confirmation order issued.... The Court recognizes that the Bankruptcy Court did issue a stay, but this was in error, as the motion for a stay was untimely and the sale had already been completed. Because the sale was completed, there was nothing left for this Court to

review; consequently, the Bankruptcy Court should not have issued the stay.

Order at 7.[4] The district court's judgment was stayed pending appeal to this court. App. 32. *See* Bankruptcy Rule 8017.

## II. ANALYSIS

■ Whether the appellants' failure to obtain a more timely stay of the sale rendered their appeal moot is a question of law that we review de novo. *See In re Wade*, 969 F.2d 241, 248 (7th Cir.1992). The Bankruptcy Code leaves no doubt as to the need for a stay pending appeal when the sale of estate property is challenged:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).[5] As we have noted, "[t]his rule 'is in furtherance of the policy of

---

3. Although the motion was dated September 14, 1992 and purportedly was mailed to the appellees on the same date, the file stamp and docket entry both indicate that the motion actually was not filed until the following day.

4. CGI and Katz suggest that the district court had no jurisdiction to vacate the stay, contending that the grant of a stay is not a final, appealable order. *See In re Powelson*, 878 F.2d 976, 981 (7th Cir.1989) ("Stay orders ... generally do not finally determine any rights or liabilities or end the litigation even under liberal bankruptcy standards."); *In re Trans World Airlines, Inc.*, 18 F.3d 208, 216 (3d Cir.1994). Here, of course, nothing remained for the bankruptcy court to decide vis à vis the sale, from which CGI and Katz had already appealed. But whether the stay was subject to appeal in this circumstance is a matter we need not ultimately decide. Even if Starmont could not appeal from the stay order, the district court remained free to consider the validity of the stay in the context of the companion appeal from the order approving the sale.

gain nothing concrete from the sale to Katz, and Katz because (unlike CGI) it had filed no written objection to the proposed sale to Starmont. In light of our conclusion that the appeal was moot, we need not reach this contention.

The mootness of that appeal is a question inextricably intertwined with the propriety of the belated stay.

5. Consistent with section 363(m), Bankruptcy Rule 8005 provides:

> A motion for a stay of the judgment, order, or decree of a bankruptcy court, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance in the bankruptcy court. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy court may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by the bankruptcy court, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy court. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the

not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Vetter Corp.*, 724 F.2d 52, 55 (7th Cir.1983) (quoting 14 *Collier on Bankruptcy* § 11–62.03 at 11–62–11 (14th ed. 1977)). The First Circuit echoed that rationale in *In re Stadium Management Corp.*, 895 F.2d 845, 847–48 (1st Cir.1990):

> There are two complementary policies at work in § 363 and the Bankruptcy Code cases. The first emphasizes the importance of encouraging finality in bankruptcy sales by protecting good faith purchasers and thereby increasing the value of the assets that are for sale. *See, e.g., In re Onouli–Kona Land Co.*, 846 F.2d [1170, 1172 (9th Cir.1988)] ("the primary goal of the mootness rule is to protect the interest of a good faith purchaser ... of the property thereby assuring finality of sale." (quotation and citation omitted)); *Greylock Glen Corp. v. Community Sav. Bank*, 656 F.2d 1, 4 (1st Cir.1981); *In re Sax*, 796 F.2d at 998 (finality increases value). The second policy is broader and stresses a court's general jurisdictional bar from deciding cases in which it cannot provide a remedy. *See, e.g., Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 132–33, 40 L.Ed. 293 (1895) (discussing generally court's impossibility of relief mootness policy); *In re Cantwell*, 639 F.2d 1050, 1053 (3d Cir.1981) ("generally, an appeal will be dismissed as moot when events occur during the pendency of an appeal [that] prevent the appellate court from granting any effective relief"). Both of these policies have existed in bankruptcy law long before the most recent code and are based in the caselaw as well as the statute. The two policies interact because the finality rule limits the remedies a court can offer. *Miami Center [Ltd. Partnership v. Bank of New York*, 820 F.2d 376, 379 (11th Cir.1987), *cert.*

*denied*, 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988) ] (the rationale for dismissing as moot certain cases is that "a court cannot order relief without compromising the integrity of the sale of the property to a good faith purchaser").

In deference to these interests and to the explicit language of section 363(m), we have repeatedly held that when a party challenges the bankruptcy court's order approving the sale of estate property to a good faith purchaser, it must obtain a stay of that order pending appeal, lest the sale proceed and the appeal become moot. *E.g., Vetter*, 724 F.2d at 55–56; *Sax*, 796 F.2d at 997–999; *In re Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125–28 (7th Cir.1986); *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992); *see also In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir.1978).[6]

■ The rub here is that CGI and the law firm did obtain a stay, but not until after the sale had already been consummated. Their failure to do so sooner cannot be overlooked, in view of the interests underlying section 363(m). The request for a stay of the sale order is not simply another formality to be observed in perfecting an appeal. A stay serves to maintain the status quo pending appeal, thereby preserving the ability of the reviewing court to offer a remedy and holding at bay the reliance interests in the judgment that otherwise militate against reversal of the sale. Thus, although section 363(m) does not state explicitly that a stay must be obtained *before* the sale is consummated, we believe that requirement to be implicit in the very purpose of the rule. Once the sale has gone forward, the positions of the interested parties have changed, and even if it may yet be *possible* to undo the transaction, the court is faced with the unwelcome prospect of "unscrambl[ing] an egg." *In re UNR Indus.,*

---

bankruptcy court. When an appeal is taken by a trustee, a bond or other appropriate security may be required, but when an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States a bond or other security shall not be required.

6. Courts have recognized certain exceptions to the rule—for example, where real property is sold to a creditor subject to a right of redemption or where state law would otherwise allow the transaction to be set aside. *In re Mann*, 907 F.2d 923, 926 (9th Cir.1990); *see also Stadium Management*, 895 F.2d at 848 n. 4.

*Inc.,* 20 F.3d 766, 769 (7th Cir.1994); *see In re Kerns,* 111 B.R. 777, 782 (S.D.Ind.1990).

■ By the time a stay was sought in this case, for example, Starmont had not only paid for the cause of action it purchased, but had already filed the malpractice suit. No doubt it had incurred costs and attorney's fees in doing so—expenses that may not add up to a grand sum in the abstract but likely are quite significant in relation to the $250 it paid for the right to sue. This is but one concrete example of the reliance interests that have accrued in the bankruptcy court's order approving the sale, and it demonstrates how complicated the matter of appellate relief has already become. Indeed, the after-the-fact stay CGI and Katz managed to obtain is itself intrusive to the extent that it prevents Starmont from proceeding with the malpractice action, leaving the company with an asset that it has paid for but cannot put to use as it sees fit.[7]

CGI and Katz rely on two cases holding that the failure to obtain a stay prior to the consummation of a court-approved sale does not moot the appeal or a post-judgment request to reconsider the approval, where the sale is executed before the ten-day appeals period expires. *In re Winstead,* 33 B.R. 408, 410–11 (M.D.N.C.1983); *In re Halladay Enterprises, Inc.,* 5 B.R. 83, 86–87 (Bankr. S.D.Tex.1980). Notably, in both cases, the sale was executed on the same day that the bankruptcy court approved the sale; indeed, in *Winstead,* the sale actually took place a week before the court's order of approval was entered. That circumstance was clearly key to the reasoning of these courts, as both expressed concern that an order could be insulated from review by speedy execution:

> To hold that a sale made within ten (10) days of the order approving sale is irreversible under any circumstances would

deprive a party from attaining the status quo during an appeal or a motion under Rule 62 [of the Federal Rules of Civil Procedure] and, such a result, in my opinion, is clearly contrary to the intent of [Bankruptcy] Rule 805 [since superseded by Rule 8005] and Rule 62. Rule 805 contemplates that an order approving sale may be stayed and unless it is stayed, the sale to a good faith purchaser is final. Such a stay and appeal could easily be circumvented if the parties are allowed to consummate a sale immediately upon entry of an order.

*Halladay Enterprises,* 5 B.R. at 87; *see also Winstead,* 33 B.R. at 410–11.

■ We are hesitant to begin qualifying or creating exceptions to the stay requirement. As we explained in *Sax,* "[t]he courts should follow statutory provisions precisely; to look for exceptions would increase litigation, which would seriously undermine the finality and certainty imposed by § 363(m)." 796 F.2d at 998. Thus, when a bankruptcy court approves a sale over objection, we believe it incumbent on the appellant to act with dispatch in seeking a stay. Whether the rule may be relaxed when the trustee proceeds with the sale immediately (as was the case in *Halladay Enterprises* and *Winstead* ) is a matter we need not address, for that is not what occurred here.[8] The trustee did not conclude the sale to Starmont in the dead of night, fast on the heels of the bankruptcy court's ruling. The sale came nearly six weeks after the judge approved it, and four days after the written order of approval was entered. The appellants have offered us no reason why, under these circumstances, they could not reasonably have sought a stay before the sale took place. As the district court pointed out, the long interim between approval of the sale to Starmont and entry of

---

7. It appears from the briefs that the adjournment of the malpractice suit is the only concrete effect of the belated stay entered by the bankruptcy court.

 We should also note that so far as we can determine from the record, the appellants were not required to post any bond to cover whatever damages that Starmont might have incurred in the event the sale were reversed. *See* Bankruptcy Rules 8005, 8017(b).

8. We note, however, that lawyers and courts are not strangers to emergency motions. Given the lengthy string of precedents holding appeals moot in the absence of a stay, it is not unreasonable to expect practitioners to be prepared to request a stay in short order when a client wishes to appeal from the bankruptcy court's approval of a sale.

the order provided the appellants with ample time to weigh their prospects, make plans for the appeal, and to prepare a motion for stay for filing either before or after the order was entered. Order at 8–9.

CGI and Katz nonetheless argue that because the trustee completed the sale to Starmont before the time to appeal lapsed, they were excused from seeking a stay more expeditiously than they did. Seizing on language in *Winstead* to the effect that "the trustee acts prematurely in conveying property prior to the expiration of the ten-day [appeals] period," 33 B.R. at 411, the appellants suggest that as long as they eventually obtained a stay, the appeal should not be deemed moot despite the fact that the stay was entered after the sale had already gone forward. The Bankruptcy Rules render this theory untenable, however. It is true that Bankruptcy Rule 7062 renders Fed.R.Civ.P. 62(a)'s automatic ten-day stay on the execution or enforcement of judgments applicable to adversary proceedings; and Bankruptcy Rule 9014 in turn makes Rule 7062 applicable to "contested matters" raised by appropriate motion. Even if we were to assume generously and for the sake of argument that the sale might qualify as a "contested matter" within the scope of Rule 9014, it is not clear that Rule 62(a)'s stay on "execution" or "enforcement" of the judgment would require the trustee to wait ten days before finalizing the sale to Starmont. *See In re Ewell,* 958 F.2d 276, 279–80 (9th Cir.1992); *In re Whatley,* 155 B.R. 775, 780–81 (Bankr.D.Colo. 1993). *Compare* Bankruptcy Rule 8017(a) ("Judgments of the district court or the bankruptcy appellate panel are stayed until the expiration of 10 days after entry, unless otherwise ordered by the district court or the bankruptcy appellate panel.") But that question is in any event entirely academic, as Rule 7062 was amended in 1991 to exempt sales ordered under section 363 of the Code from the automatic stay of Rule 62(a). Rule 7062 advisory committee's note; *Ewell,* 958 F.2d at 278 n. 1. Thus, the notion that the trustee acted prematurely in completing the sale four days after the order of approval was entered is simply mistaken; absent entry of a stay, the trustee was not required to wait for the ten-day period to expire before

acting. *See Whatley,* 155 B.R. at 778–79. Even if CGI and Katz had filed a notice of appeal immediately upon entry of the sale order, the trustee would have remained free to proceed unless and until a stay were sought, for section 363(m) makes clear that knowledge that an appeal is pending itself does not render the sale to a good faith purchaser subject to reversal. *Rock Indus. Mach.,* 572 F.2d at 1199; *Stadium Management,* 895 F.2d at 848 n. 4.

## III. CONCLUSION

The appellants do not dispute that the sale to Starmont was in good faith and that the bankruptcy court was within its authority to approve the sale. Consequently, given the explicit terms of section 363(m), our inquiry is at an end. By the time CGI and Katz filed their notice of appeal, the completion of the sale had already rendered the appeal moot. The subsequent entry of a stay by the bankruptcy court had no reviving effect in this regard. The judgment of the district court dismissing the appeal is AFFIRMED, and the stay of that judgment pending the appeal to this court is VACATED.