In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2062

In re JOSEPH VLASEK,

*Debtor-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 4633—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED DECEMBER 9, 2002—DECIDED APRIL 11, 2003

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Joseph Vlasek appeals the district court's affirmance of the bankruptcy court's refusal to dismiss his bankruptcy petition on the assertion that his mother had fraudulently signed the petition in his name and filed it without his authority. We dismiss Vlasek's appeal.

## HISTORY

In January 1991, Joseph Vlasek netted $907,500 in settlement of a personal-injury lawsuit arising out of an injury he received in an automobile accident. Because Vlasek was seventeen years old at the time, a minor estate was opened on his behalf and the settlement proceeds were delivered to the estate. Two months later, on the occurrence of his eighteenth birthday, the estate was closed, and the sum of $909,561.88 was turned over to Vlasek.

Over the next few years, Vlasek started and closed two business and bought four properties in his own name in Homewood, Illinois. All four properties were mortgaged, and he and his mother moved into one of them. By 1993, the failed businesses and real-estate purchases had consumed most of his settlement proceeds.

In April 1993, Vlasek's girlfriend gave birth to a son. She alleged Vlasek was the father, but Vlasek denied paternity. So, in October 1993, Vlasek's girlfriend filed a paternity action, and nearly three years later, an Illinois state court found that Vlasek was the child's father and ordered him to make semi-monthly $1000 child-support payments. When he refused to comply with that order, the state court, on August 20, 1996, entered a retroactive-child-support judgment against Vlasek in the amount of $77,000.

Seven days later Vlasek filed a Chapter 7 bankruptcy petition, and a month after that, he submitted his bankruptcy schedules. But curiously those schedules did not list the four real-estate holdings that Vlasek had purchased. It appears that back in 1993 while his child's mother was still pregnant, Vlasek had begun transferring his real-estate holdings out of his name—without receiving any compensation.

By questioning Vlasek during his mandatory creditor meeting held pursuant to 11 U.S.C. § 341, the Trustee learned about the personal-injury settlement, the four real-estate purchases, and the subsequent transfers. He later investigated the circumstances of the property transfers, determined the transfers were voidable, and successfully pursued a fraudulent-transfer action in the bankruptcy court. As a result, the bankruptcy court set aside the real-estate transfers. Vlasek did not move to alter or amend this order. Nor did he seek to appeal the bankruptcy court's ruling.

The bankruptcy court obtained an agreement from the Trustee that the Trustee would not seek to sell Vlasek's home unless the funds obtained by selling the other three properties proved insufficient to settle all creditor claims. Nevertheless, it became apparent that the proceeds from the three property sales would in fact prove insufficient. Thus, on November 17, 1998, the bankruptcy court entered an order authorizing the Trustee to employ a real-estate broker to market Vlasek's residence.

Seven days after the court authorized the Trustee to begin preparations to sell Vlasek's residence, Vlasek moved to *dismiss* his bankruptcy petition altogether. This request came nearly two-and-a-half years after the bankruptcy petition had been filed. Vlasek alleged that he had never signed his bankruptcy petition, but rather that his mother had fraudulently signed his name. He later claimed that at the time of the bankruptcy's filing in August 1996 he was mentally incompetent—a result of a closed-head injury suffered in the automobile accident. Vlasek asserted as proof of his incompetency a later 1997 Illinois probate court order granting his mother plenary guardianship over his person.[1] Vlasek asked the court to dismiss his bankruptcy case and void each of the orders it had entered previously.

Besides the November 17, 1998 order authorizing the Trustee to hire a broker to market Vlasek's residence, the orders that Vlasek also sought to void through dismissal would have included (i) the order setting aside the four real-estate transfers; (ii) a March 19, 1998 order ap-

---

[1] Under Illinois law, the duties of the personal guardian extend to supervising the ward's educational and health needs only, *see* 755 ILL. COMP. STAT. 5/11a-17 (2003), and do not include the authority to appear for or sue on behalf of the ward's estate in a court of law.

proving the sale of the first of the four properties, located at 2147 Cedar Road, for the sum of $240,000; and (iii) a June 2, 1998 order requiring the Trustee to abandon the second of the four properties, located at 17835 South Howe, pursuant to a motion to compel brought by the bank that was foreclosing on that property. Vlasek, however, never sought to appeal or stay any of these individual orders at the time they were rendered.

The bankruptcy court promptly conducted an evidentiary hearing on Vlasek's motion to dismiss. The court admitted into evidence a recording and transcript of Vlasek's § 341 creditor meeting. Vlasek also testified during the proceedings, but the bankruptcy court observed that his testimony "appeared to have been rehearsed." (R.1, Bankr. N.D. Ill. Apr. 30, 1999 Order at ¶14.) At the request of the Cook County Public Guardian's office (who had been invited by the court to participate in the hearings given the 1997 Illinois state court guardianship action), the bankruptcy court ordered Vlasek to submit to a psychiatric evaluation. The evaluation was scheduled for March 23, 1999, and the court deferred ruling on the dismissal motion. Vlasek never appeared for the evaluation.

While the dismissal motion was still pending, the court approved the sale of the third of the four properties, located at 17864 Tipton, for the sum of $154,500 by order dated January 7, 1999. In spite of the fact that success on his dismissal motion would render void this order also, Vlasek sought no appeal from the ruling nor did he seek to stay the sale pending the resolution of the dismissal motion.

On April 30, 1999, the bankruptcy court determined that even if Vlasek did not personally sign his name to the petition, he otherwise had adopted and ratified its filing through his course of conduct during the two years of bankruptcy proceedings. He was therefore estopped from raising the issue. Furthermore, the bankruptcy court

was skeptical of Vlasek's evidentiary basis for filing the motion, noting that he had only raised the genuineness of his signature and his mother's lack of authority to act on his behalf when the sale of their residence appeared imminent. (The motion's filing also coincided with Vlasek's and his mother's repeated obstructionist efforts to thwart or delay the sale.) Consequently, the bankruptcy court found that the petition was validly filed and that the Trustee's ongoing administration of the estate was proper. Vlasek took no appeal from the ruling.

Instead, a few months later, Vlasek filed a motion "to vacate all orders relating to any adversary proceedings," which was apparently stylized, like the relief he requested in his motion to dismiss, to contest the court's earlier decisions to set aside the four property transfers and any orders approving their sale. The bankruptcy court denied that motion on June 8, 1999. Vlasek didn't attempt to appeal the ruling. Nor did he later appeal or seek to stay the bankruptcy court's August 31, 1999 order approving the sale of the last of the four properties—his residence at 1537 W. 187th Street.

The Trustee's administration of the estate proceeded, and on May 25, 2001, the bankruptcy court approved the Trustee's final accounting of the disbursement of all estate funds, discharged the Trustee, and closed the estate. Only then did Vlasek file a notice of appeal, seeking to challenge, under the auspice of the May 2001 order closing the estate, both the April 30, 1999 ruling on the motion to dismiss and the June 8, 1999 ruling on the motion to vacate.

On review, the district court determined that Vlasek could not have appealed the April 30, 1999 denial of his motion to dismiss as a "final" order, and thus held that he was not barred from appealing that ruling under his current notice. But it also held that the bankruptcy court

properly denied Vlasek's attempt to dismiss his bankruptcy petition, agreeing with the bankruptcy court that the time to challenge his mother's allegedly fraudulent filing had long passed by the time the motion was filed and that he had waived any claim of mental incompetence by failing to submit to the court-ordered psychiatric evaluation. Regarding the motion to vacate, the district court held Vlasek's appeal untimely, because orders approving the sale of assets of the estate are final for purposes of appeal and Vlasek did not appeal those decisions within the statutorily mandated time frame. *See* FED. R. BANKR. P. 8002(a) (providing that notice of appeal shall be filed within ten days from the date of entry of the judgment, order, or decree).

Vlasek seeks review of the district court's decision, challenging its affirmance of the bankruptcy court's April 30, 1999 order denying the motion to dismiss. He claims that the allegedly fraudulent filing denied him due process. Vlasek does not challenge the district court's ruling that Vlasek's appeal of the June 8, 1999 order was untimely.

ANALYSIS

*I.  Jurisdiction*

The Trustee argues that we lack jurisdiction to hear Vlasek's appeal. As noted, Vlasek challenges the April 30, 1999 denial of his motion to dismiss his bankruptcy petition under his notice of appeal from the bankruptcy court's May 25, 2001 order closing the estate and discharging the Trustee. The Trustee argues that the April 30, 1999 order was, in fact, "final" and that Vlasek's appeal of the decision under the May 25, 2001 discharge order is thus untimely.

A court of appeals' jurisdiction over a district court's review of a bankruptcy court order can only be based on a

proper exercise of the district court's jurisdiction. *In re Maurice*, 69 F.3d 830, 832 (7th Cir. 1995). Whether the district court had jurisdiction over any particular matter is a question of law, reviewable *de novo. Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 878 (7th Cir. 2002).

In general, the district court has jurisdiction to hear appeals only from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a) (2003). This Court has recognized that "denials of motions to dismiss are generally not final orders, even in the bankruptcy context." *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 864 (7th Cir. 1989) (citing *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc.)*, 762 F.2d 542, 546 (7th Cir. 1985) ("The order[ ] . . . denying [the] motion to dismiss the Chapter 11 petitions . . . [was] interlocutory and reviewable only if the district court agreed to entertain the appeals.")).

The Trustee notes that there is contrary authority that treats an order denying a motion to dismiss a bankruptcy petition as final where it can be shown that there would be a substantial interference with a debtor's alleged property rights resulting from the denial. *See Old Nat'l Bank of Wash. v. Allen (In re Allen)*, 896 F.2d 416, 418-19 (9th Cir. 1990); *In re Christian*, 804 F.2d 46, 47-48 (3d Cir. 1986). While we have recognized the existence of this contrary authority, we have previously declined to adopt it. *See Jartran*, 886 F.2d at 864. We will not disturb that ruling absent a compelling argument addressing *why* we should now adopt this substantial-interference exception, and the Trustee here makes none. Accordingly, we will not treat as "final" the bankruptcy court's April 30, 1999 decision to deny Vlasek's motion to dismiss his bankruptcy petition and, thus, hold that an appeal of that decision as of right under 28 U.S.C. § 158(a) was not available.

*II. Mootness*

It does not follow, however, that the relief requested in Vlasek's dismissal motion can be redressed here. "A case is moot if there is no possible relief which the court could order that would benefit the party seeking it." *In re Envirodyne Indus.*, 29 F.3d 301, 303 (7th Cir. 1994) (citation omitted). We hold Vlasek's appeal moot to the extent it asks us to overturn the bankruptcy court's approval of the four property sales.

Both the bankruptcy court and the district court saw Vlasek's motion to dismiss his bankruptcy petition for what it truly was: a thinly veiled attack on the bankruptcy court's November 17, 1998 order paving the Trustee's way to sell Vlasek's home. It was only after that decision that Vlasek claimed that his petition had been fraudulently filed. What is more, the relief requested under Vlasek's appeal of his dismissal motion is that all orders entered pursuant to the bankruptcy proceedings be vacated. Those orders included, of course, the orders approving the sale of all of his properties. Thus, the practical effect of allowing Vlasek to withdraw from the bankruptcy process at this stage would be to overturn these sales.

The bankruptcy code provides that a trustee "after notice and a hearing, may . . . sell, . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b) (2003). In other words, the trustee must petition the bankruptcy court for approval to pursue a sale of estate property. The debtor, or an interested third-party, can contest the approval of the sale before the bankruptcy court and may appeal an unfavorable ruling immediately. *In re Sax*, 796 F.2d 994, 996 (7th Cir. 1986) ("Orders approving or failing to approve the sale of a debtor's property are considered final decisions and are immediately appealable.").

The ability to appeal immediately these validity-of-sale decisions benefits both the debtor's estate and creditors. *Id.*

at 997. The uncertainty that would be fostered by a lack
of timely review would undoubtedly lower the market
price for estate assets, resulting in diminished creditor
restitution per asset and necessitating the liquidation
of more estate assets to cover the same amount of creditor
claims. *Id.* at 997, 998 ("Without . . . finality . . . purchasers
are likely to demand a steep discount for investing in the
property.").

In further interest of finality, when a party seeks review
of a validity-of-sale decision, it must seek to stay that
decision pending appeal. 11 U.S.C. § 363(m) (2003). The
stay requirement bolsters third-party-purchaser reliance
by "minimiz[ing] the chance that purchasers will be dragged
into endless rounds of litigation to determine who has
what rights in the property." *Sax*, 796 F.2d at 998. Thus,
"[t]his Court and others have repeatedly held that an
appeal of a bankruptcy sale is moot if the stay required by
§ 363(m) is not obtained." *Id.* at 997 (citing *Hoese Corp. v.
Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55-56 (7th Cir.
1983), *Sulmeyer v. Karbach Enter. (In re Exennium, Inc.)*,
715 F.2d 1401, 1403-04 (9th Cir. 1983), *Tompkins v.
Frey (In re Bel Air Assoc.)*, 706 F.2d 301, 304-05 (10th Cir.
1983), and *Bleaufontaine, Inc. v. Roland Int'l (In re Bleau-
fontaine, Inc.)*, 634 F.2d 1383, 1389-90 (5th Cir. 1981)).

Despite the fact that Vlasek's motion to dismiss his
bankruptcy petition seeks the reversal of each and every
order approving the sale of an estate asset, he at no time
sought to stay or appeal any of those individual sale or-
ders. This lack of timely action proves fatal to Vlasek's
attempt to reverse them now under the guise of his appel-
late effort to void the entire bankruptcy.

Even if we were to entertain the notion that during his
mother's alleged overreaching and continuing fraud on the
bankruptcy court, Vlasek lacked the ability to challenge
these sales individually, once he asserted his rights by

moving to dismiss his bankruptcy petition on November 24, 1998, he could have—and should have—appealed and sought stays of any subsequent orders approving the sale of estate assets. There were at least two opportunities to do so, including the August 31, 1999 approval of the sale of his residence. Vlasek had ten days from the date of each sale's approval to appeal the ruling and secure a stay pending appeal. *See* FED. R. BANKR. P. 8002(a), 6004(g).

Knowing that his dismissal motion sought to affect the outcome of those sales, it became incumbent upon Vlasek concurrently to stay their effect, appeal those decisions, and raise the fraudulent-filing issue on appeal at that time.[2] Since he did not do so, to the extent that his appeal seeks to overturn these sales, it is rendered moot. In short, we will not allow Vlasek to perform what amounts to an end run around the appeal and stay requirements of § 363(m).

*III. Equity*

Nevertheless, this finding does not necessarily dispense with Vlasek's appeal entirely. For even if Vlasek cannot now disturb the sale of the estate's assets to third parties, it may be that he is entitled to the proceeds from those sales, as opposed to his creditors. Now, at the time of this appeal, those proceeds already have been distributed pursuant to the Trustee's final report and accounting. But the argument advanced is that if Vlasek's bankruptcy

---

[2] Generally speaking, the prohibition against immediate appeal of nonfinal orders, such as denials of motions to dismiss, is offset by the rule that once appeal is taken from a final judgment, earlier rulings can be reviewed. 15A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3905.1 (2d ed. 1992). As shown above, the May 25, 2001 order closing the estate was not the first and only "final" order by which Vlasek could have sought review of the April 30, 1999 denial of his motion.

petition was fraudulently filed, it would follow that the Trustee erroneously distributed estate assets to creditors. And there is authority holding that a trustee has equitable powers to recover erroneous distributions. *See, e.g.*, *United Prop., Inc. v. Emporium Dept. Stores, Inc.*, 379 F.2d 55, 71-72 (8th Cir. 1967) (citing cases, including *In re Lilyknit Silk Underwear Co.*, 73 F.2d 52, 54 (2d Cir. 1934) ("In the exercise of a duty imposed by the bankruptcy law, the trustee may invoke such general equitable principles as are applicable. Among them is the power to require restitution of what has been taken by the enforcement of a judgment subsequently reversed." (citations omitted))). For the sake of argument, then, let us assume that Vlasek's creditors could be ordered to surrender some or all of the proceeds they received from the sale of estate assets. *See In re Envirodyne Indus.*, 29 F.3d at 304 (recognizing the appellate court's authority to order modification of an implemented reorganization plan, even if it would require creditors to surrender distributed assets).

But we have observed that there is a reluctance to modify bankruptcy reorganization plans if they have already been implemented because of the effects of modification on nonparties to the dispute. *Id.* For as noted above, a trustee's power to recover lies only in equity, and it is an "age-old principle that in formulating equitable relief a court must consider the effects of the relief on innocent third parties." *Id.* Therefore, if we determine that modification of a reorganization plan—or, in this case, a modification of the estate's final distribution—would unduly upset an innocent nonparty's legitimate expectations, we may refuse to award the relief. *Id.*

Here, Vlasek's creditors, including his child's mother, are nonparties to this suit, are innocent of the alleged fraud, and have been in continuing reliance on the fairness of the distribution of Vlasek's estate for nearly two years. Requiring the Trustee to seek restitution from

Vlasek's creditors now would clearly upset their legitimate expectations.

## CONCLUSION

Because Vlasek did not seek to stay any of the orders approving the sale of estate assets, his appeal of the bankruptcy court's denial of this motion to dismiss is rendered moot as to those sales. To the extent Vlasek's appeal requests equitable relief by requiring the return of estate assets, we refuse that request. As the district court observed, the self-dealings and forgeries of which Vlasek accuses his mother may support a claim against her personally in some forum, but he cannot seek to remedy any alleged harm by disturbing the conclusion of his bankruptcy proceedings. This appeal is therefore DISMISSED.

A true Copy:

        Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*