In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1889

JOHN HOWER,

*Plaintiff-Appellant,*

*v.*

MOLDING SYSTEMS ENGINEERING CORP.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04-502-MJR—**Michael J. Reagan**, *Judge.*

ARGUED DECEMBER 9, 2005—DECIDED APRIL 19, 2006

Before FLAUM, *Chief Judge,* RIPPLE and WILLIAMS, *Circuit Judges.*

WILLIAMS*, Circuit Judge.* Creditor-appellant John Hower moved to stay the sale of the debtor's assets in this bankruptcy proceeding. The bankruptcy court denied the motion on its merits and Hower appealed to the district court. That court dismissed the appeal as moot because the sale had already taken place, and because we agree with that decision, we affirm the ruling of the district court.

## I. BACKGROUND

In September of 2003, creditor-appellant John Hower won an Illinois state court judgment in excess of $500,000 against debtor-appellee Molding Systems Engineering Corporation ("Molding"). A few weeks later, Molding filed a voluntary petition for Chapter 11 bankruptcy protection. Molding filed a motion in the bankruptcy court to sell certain of its assets free and clear of liens and claims, including Hower's judgment creditor claim. This motion requested that Molding's assets be sold to Molding Services of Illinois ("MSI"), a new corporation owned and led by the same pair of individuals who owned and ran the now-bankrupt Molding. Put simply, Molding and MSI share the same president and the same majority shareholder. Hower objected to the motion on several grounds, including the argument that it was not filed in good faith, but rather was an attempt to continue in business under a different name while avoiding Hower's claim. At the hearing on that motion, the bankruptcy judge gave Hower the opportunity to try to locate competing bidders for the assets within 30 days. Unable to locate any other bidder within the 30-day period, Hower filed his own bid for the assets, offering to assume Molding's debts.

At the next hearing, MSI and Molding's secured creditors presented numerous arguments supporting MSI's bid as the superior bid. The bankruptcy trustee stated that he did not share Hower's objection to the MSI bid. MSI's lawyer explained that while Molding and MSI shared the same president and same major shareholder, the corporations were meaningfully distinct entities because MSI had obtained $250,000 in operating funds which it could use to keep the business functioning, whereas Molding had assets of five dollars. Two secured creditors (banks) who were owed several hundred thousand dollars by Molding noted that they strongly supported the MSI sale because they believed that MSI's infusion of cash would keep the busi-

ness operating, while there was no indication that Hower had enough funds to meet the payroll. Additionally, Hower's offer to assume Molding's debts carried no weight with these creditors because he had not contacted them or given them any assurance that he could actually bear those debts.[1] Following the presentation of these arguments, the bankruptcy judge orally granted the motion for sale to MSI and denied Hower's motion to buy.

On June 7, 2004, the bankruptcy court entered a written sale order authorizing the MSI sale, explicitly finding that MSI was a good-faith purchaser and stating that, notwithstanding Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d), the order would take effect immediately and "shall not be stayed." On June 15, Hower filed a motion to stay the sale. On June 16, the judge denied this motion on the merits, explaining that a rapid sale was in the best interests of the creditors. On June 17, Hower appealed that denial to the district court. On June 24, Molding filed a Report of Sale stating that the sale of assets to MSI had closed on June 8, the day after the sale order was entered. In light of the completed sale, the district court denied Hower's appeal as moot. This appeal followed.

## II. ANALYSIS

### A. Hower's appeal from the sale order to the district court was moot.

Whether an appeal was properly dismissed as moot is a legal question; thus, our review of the district court's ruling is de novo. *Higgason v. Farley*, 83 F.3d 807 (7th Cir. 1996). The district court ruled that Hower's appeal was moot

---

[1] MSI also offered the affidavits of Molding's president and second shareholder stating that MSI's bid was fair and required by exigent circumstances, but those affidavits were later stricken as inadmissible, so we do not consider them here.

because the disputed sale had already taken place. This is correct. The Bankruptcy Code provides that absent a stay of sale, appeals of orders authorizing asset sales do not affect the validity of sales to entities that purchased the assets in good faith. 11 U.S.C. § 363(m). In the absence of a stay pending appeal, the good-faith sale of a debtor's assets is final. The Code strongly favors finality because the protection of good-faith purchasers maximizes the value of the assets for sale, which benefits both debtors and creditors. *In re CGI Indus., Inc.*, 27 F.3d 296, 299 (7th Cir. 1994). Here, there is no question that no stay was entered, that the bankruptcy court made an explicit finding of good faith, and that the sale took place. Therefore, the appeal is moot, because the sale is final and this court is powerless to provide Hower the remedy he seeks. *Id.*

## B. The bankruptcy court's refusal to stay the sale was not an abuse of discretion.

Although we have found that the appeal is moot, we will address Hower's argument that this court may evaluate the correctness of the underlying sale order because of the bankruptcy court's alleged errors regarding the issuance of a stay and the finding of good faith. In other words, he complains that improper circumstances and wrongful actions by the bankruptcy court led to the improper sale that mooted his claim. These underlying arguments fail on the merits.

Federal Rule of Bankruptcy Procedure 6004(g) provides that orders authorizing the sale of debtors' assets are automatically subject to a ten-day stay *unless the court orders otherwise*. We review a bankruptcy court's decision to lift an automatic stay for abuse of discretion. *In re Meyer Med. Physicians Group, Ltd.*, 385 F.3d 1039, 1041 (7th Cir. 2004). Here, the court explicitly ordered otherwise and declined to reconsider its decision eight days later when

Hower moved for a stay. "[B]ankruptcy courts face a difficult task in weighing the competing interests implicated by upset bids . . . [T]hey must be accorded maximum discretion in striking an appropriate balance." *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 770 (7th Cir. 2004). Given the unusually exigent circumstances of this case—the debtor had five dollars in its coffers, it had dozens of full-time employees and a payroll to meet, and the purchaser offered to make $250,000 available to keep operations going—the judge acted within his discretion in expediting the purchase, particularly in light of the trustee's and the secured creditors' approval of the sale and Hower' slim chance of prevailing on appeal. Hower's equitable point that the lack of a stay effectively denied him the opportunity to appeal the court's decision carries some force, but this circumstance is contemplated by the Code's preference for finality in sale orders and the broad discretion it provides judges to deny stays pending appeal. Therefore, it was not an abuse of discretion for the bankruptcy judge to prioritize the debtor's ability to operate over Hower's right to pursue an appeal.

## C. The bankruptcy court's determination of good faith was not clearly erroneous.

Although a good-faith sale of a debtor's assets is unaffected by a later challenge to or revocation of the sale authorization, asset sales may be challenged after the fact if there was collusion, fraud, or the sale otherwise manifested bad faith. *In re Andy Frain Servs., Inc*, 798 F.2d 1113 (7th Cir. 1986). Good faith is a factual finding and reviewed for clear error. *In re Smith,* 286 F.3d 461, 464 (7th Cir. 2002). Hower's argument that MSI was not a good-faith purchaser is predicated on the fact that it is an insider corporation formed by the same two individuals who controlled Molding. Superficially, this argument has appeal,

as there may be something suspect in the officers and shareholders of a debtor company forming a new corporation to buy the assets of the debtor they previously mismanaged. In other words, the facts in this case could be interpreted as allowing the former president and shareholder of Molding to shed undesired debt and repurchase core assets at a discount. But in order to encourage insolvent debtors to continue operating and generating revenue for the creditors, bankruptcy debtors are permitted to do exactly that, provided that the insider involvement is disclosed at the beginning of the proceedings. *See, e.g.*, *In re Firstmark Corp.*, 46 F.3d 653, 656 (7th Cir. 1995) (citing with approval the district court's statement that "sale of a debtor's property to an insider is subject to close scrutiny. However, it is not bad faith per se" and only constitutes bad faith if there is a breach of the duty of full disclosure). And there is good reason for allowing such transactions. That is, the failure of a company may be due to adverse market conditions—rather than flagrant mismanagement—and the former officers may be in the best position to make use of the assets and formulate a successful future business model. As a result, there may be circumstances where an effective repurchase of assets is the most efficient business outcome. The approval of the trustee and secured creditors here suggests that this is such a case.

Hower points out that Molding and MSI failed to submit admissible evidence demonstrating that the sale occurred in good faith. That may be so, but Hower likewise fails to support his allegation of bad faith with documents, testimony, personal knowledge, or anything other than the accusation that this was an insider sale. While the Bankruptcy Code neither defines good faith nor states how it is to be established, this court has placed the burden on the party alleging bad faith or seeking reconsideration of a good-faith finding. *See, e.g.*, *In re Andy Frain Servs., Inc*, 798 F.2d at 1125 ("Although Wilson presents a number of

reasons why we should find bad faith, none of them are persuasive"); *see also Katten v. Bailey*, No. 95-C-2720, 1995 U.S. Dist. LEXIS 14431, at \*17 (N.D. Ill. Oct. 2, 1995) (applying *Andy Frain* and concluding that "upon appearing before the Bankruptcy Court, the plaintiff-appellants were required to establish by a preponderance of the evidence that Edward Fox was not a good faith purchaser"). In the absence of any admissible evidence of bad faith, we cannot say that it was clear error for the bankruptcy judge to conclude that the sale occurred in good faith.

Hower's final arguments merit only the briefest discussion. He argues that there was no evidence that the parties closed on the sale before the appeal was filed, but a Report of Sale was in fact filed describing the closing. Hower offered no evidence to contradict that document, and the bankruptcy court was perfectly entitled to accept it as valid. Hower's argument that Federal Rule of Civil Procedure 62(a) controls his right to a stay pending appeal is simply wrong; the applicable rule in this matter is Federal Rule of Bankruptcy Procedure 6004(g), discussed above.

Hower's complaint appears to be driven by the understandable grievance that the debtors here are legally evading payment of his judgment.[2] But the very existence of bankruptcy courts contemplates that sometimes unsecured creditors will fail to collect all or part of their legitimate claims. The task of the court is to relieve an honest debtor's burden and apportion the loss equitably and efficiently, not to ensure that every creditor gets his due. 1 BANKR. DESK GUIDE § 1.5 (2005).

---

[2]  The validity of Hower's claim is in question, although that issue is not before us at the moment. A parallel proceeding is currently addressing the question of whether his failure to declare his claim against Molding as an asset in his own *pro se* personal bankruptcy judicially estops him from pursuing collection of that judgment.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the ruling of the district court.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*