# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-2085

IN RE:

RIVER WEST PLAZA-CHICAGO, LLC,
doing business as JOFFCO SQUARE,

*Debtor-Appellee*.

APPEAL OF:

FRANK SCHWAB.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-7227—**Elaine E. Bucklo**, *Judge.*

ARGUED OCTOBER 21, 2011—DECIDED DECEMBER 22, 2011

Before BAUER and TINDER, *Circuit Judges*, and MAGNUS-STINSON, *District Judge*.[*]

MAGNUS-STINSON, *District Judge.* While substance counts, procedure does too. This appeal arises out of the

---

[*] The Honorable Jane E. Magnus-Stinson, District Judge for the United States District Court for the Southern District of Indiana, is sitting by designation.

Chapter 11 bankruptcy petition of River West Plaza-
Chicago, LLC ("River West"). The bankruptcy court
disallowed the claim by Appellant, and purported
creditor, Frank Schwab, erroneously in his view. As we
explain below, however, two procedural impediments
prevent us from reviewing the propriety of the bank-
ruptcy court's disallowance decision because they fore-
close any possibility of substantive relief if he were to
prevail here. The first is Mr. Schwab's failure to obtain
a stay of the sale of River West's property pending
appeal, as required under 11 U.S.C. § 363(m). The second
is his failure to file a notice of appeal that challenged
the bankruptcy court's order approving the joint liquida-
tion plan that distributed the sales proceeds. Mr. Schwab
therefore cannot seek to modify the plan here, in an
effort to excuse his failure to obtain a stay.

# I.

## BACKGROUND

River West was organized to own and operate a single
asset: Joffco Square, a shopping center in Chicago.
Before it filed for bankruptcy, Mr. Schwab had filed
suit against River West in state court, alleging that he
was entitled to a percentage of River West's profits
under a written agreement. After the bankruptcy
petition, a stay automatically issued against the state-
court litigation. *See* 11 U.S.C. § 362(a). Accordingly,
Mr. Schwab filed a notice of claim with the bankruptcy
court, so that he could continue to pursue the money
that he believes River West owes him.

Although Mr. Schwab argued that a *lis pendens* that he filed in connection with his state-court lawsuit made his claim a secured one, the bankruptcy court disagreed. At a September 2010 hearing, the bankruptcy court disallowed the claim in its entirety. According to the bankruptcy court, even if the allegations in the state-court litigation were true, Mr. Schwab could have nothing more than an equity interest in River West, which would necessarily be subordinate to all other creditors' claims and thus worthless.

The timing of what happened after the bankruptcy court disallowed Mr. Schwab's claim is critical for this appeal.

- October 4, 2010:    River West and its largest secured creditor, Bank of America, N.A., file a joint liquidation plan, proposing to sell Joffco Square at auction.

- October 6, 2010:    Mr. Schwab appeals the bankruptcy court's disallowance of his claim to the district court.

- December 9, 2010:    Mr. Schwab requests that the bankruptcy court stay the sale of Joffco Square pending resolution of his appeal.

- December 10, 2010:    Mr. Schwab requests that the district court stay the sale of Joffco Square pending resolution of his appeal and expedite the briefing of his appeal.

•December 14, 2010:    The district court denies the motion for stay as premature, because the bankruptcy court had not issued a ruling on Mr. Schwab's pending motion for a stay from that court. It does, however, expedite briefing of the appeal.

•December 14, 2010:    The bankruptcy court denies Mr. Schwab's motion to stay.

•December 14, 2010:    Mr. Schwab files an objection to the joint liquidation plan with the bankruptcy court, arguing among other things that "confirmation should not take place until the District Court has ruled on Schwab's appeal . . . ."

•December 15, 2010:    The auction of Joffco Square occurs, as scheduled, with Inland Real Estate Corporation's ("Inland") bid prevailing.

•December 22, 2010:    The bankruptcy court overrules Mr. Schwab's objection to the joint liquidation plan and enters an order confirming it, which among other things specifies the distribution that each creditor would receive. The bankruptcy court also approves the sale of Joffco Square to Inland, "free and clear of liens,

clams, and encumbrances, as provided in Bankruptcy Code section 363."

• December 28, 2010: The fourteen-day period expires for Mr. Schwab to appeal to the district court the bankruptcy court's December 14 denial of his motion to stay. *See* Fed. R. Bankr. Pro. 8002(a).

• January 5, 2011: The fourteen-day period expires for Mr. Schwab to appeal to the district court the bankruptcy court's December 22 confirmation of the joint liquidation plan. *See id*.

• January 11, 2011: The joint liquidation plan becomes effective. The sale of Joffco Square to Inland closes.

• February 9, 2011: The bankruptcy court holds a hearing to address any outstanding post-confirmation matters. Mr. Schwab does not attend.

• February 9, 2011: River West and Bank of America move to dismiss Mr. Schwab's appeal as moot under 11 U.S.C. § 363(m).

• February 23, 2011: The bankruptcy court issues its final decree and closes the bankruptcy.

• April 11, 2011:        The district court dismisses Mr. Schwab's appeal as moot in light of § 11 U.S.C. 363(m).

• May 11, 2011:          Mr. Schwab files his notice of appeal to this Court from the district court's April 11 dismissal.

## II.

### DISCUSSION

As he did before the district court, Mr. Schwab argues that (1) his state-court notice of *lis pendens* gave him a property interest in Joffco Square; (2) nothing in the Bankruptcy Code allowed the bankruptcy court to recharacterize that interest as equity; and (3) the bankruptcy court erred in authorizing and confirming a sale of Joffco Square free and clear of his interest, *see* 11 U.S.C. § 363(f) (authorizing free-and-clear sales only under certain circumstances). The district court held that because Mr. Schwab neither obtained a stay of the sale of Joffco Square nor challenged Inland's status as a good-faith purchaser, § 363(m) rendered his appeal of the disallowance order moot, and dismissed it.

We review the district court's finding of mootness *de novo. Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935, 937 (7th Cir. 2006) (citation omitted). And we agree with the district court that we cannot reach the merits of those issues, as they are indeed moot.

"A central purpose of bankruptcy . . . is to maximize creditor recovery." *Corporate Assets, Inc. v. Paloian*, 368

F.3d 761, 767 (7th Cir. 2004). Because "purchasers are likely to demand a steep discount" when purchasing a bankruptcy debtor's property if the sale can later be disturbed, *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986) (citation omitted), Congress has decided that bankruptcy sales are usually final. Accordingly, if a bankruptcy court authorizes the sale of property, the subsequent reversal on appeal of the sale authorization "does not affect the validity of [the] sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal." 11 U.S.C. § 363(m).

Given the statutory guarantee of finality that § 363(m) provides, "we have repeatedly held that when a party challenges the bankruptcy court's order approving the sale of estate property to a good faith purchaser, it must obtain a stay of that order pending appeal, lest the sale proceed and the appeal become moot." *In re CGI Indus.*, 27 F.3d 296, 299 (7th Cir. 1994) (collecting cases). A case must be declared moot where "there is no possible relief which the court could order that would benefit the party seeking it." *In re Envirodyne Indus.*, 29 F.3d 301, 303 (7th Cir. 1994) (citation omitted).

So even if Mr. Schwab were correct that the bankruptcy court should not have stripped away his interest in Joffco Square (which we do not decide), § 363(m) prevents us from resurrecting that interest in the real estate itself. As below, Mr. Schwab does not contest Inland's status as a good-faith purchaser, which is the sole

ground § 363(m) provides for modifying the terms of a sale completed in the absence of a stay. *See In re Sax*, 796 F.2d at 997-98 (finding appeal moot where no stay was entered pending appeal that alleged that bankruptcy court improperly authorized the sale of property that was not even part of the bankruptcy estate); *In re Gucci*, 105 F.3d 837, 839 (2d Cir. 1997) ("Our appellate jurisdiction over an unstayed sale order issued by a bankruptcy court is statutorily limited to the narrow issue of whether the property was sold to a good faith purchaser." (citations omitted)).

Inland successfully bid to purchase Joffco Square free and clear. With the sale now completed, § 363(m) guarantees that no appellate court will disturb the bankruptcy court's order that Inland take Joffco Square "free and clear of liens, claims, encumbrances," including any that Mr. Schwab would like to assert if he could revive his claim here. And despite Mr. Schwab's suggestion to the contrary, we may not ignore § 363(m) just because Inland is not a party to this appeal and has not, therefore, raised § 363(m) itself. *See In re Vlasek*, 325 F.3d 955, 962 (7th Cir. 2003) (affirming invocation of § 363(m) by a trustee, rather than a good-faith purchaser, who successfully argued that the absence of a stay prevented the court from overturning sales of various pieces of property).

Mr. Schwab alternatively argues that he can avoid a challenge to the "validity" of the sale for the purposes of § 363(m), and thus its stay requirement, by asking us to simply rearrange the distribution of the sale proceeds

if he prevails. Specifically, he argues that his claim can be paid out of the distribution that went to Bank of America, which is a party to this appeal.

Mr. Schwab's alternative argument also falters, for two reasons: the effect of his notice of appeal to the district court and, again, § 363(m).

First, the notice of appeal: The only notice filed in the bankruptcy court was Mr. Schwab's challenge to his claim's disallowance. Mr. Schwab never appealed the bankruptcy court's order approving the liquidation plan to the district court. The order established Bank of America's share of the proceeds. Because Mr. Schwab's first notice of appeal did not (and cannot) encompass orders that post-date it, the district court could not order the modification of the plan to rearrange the distribution of the sale proceeds. *See In re Vlasek*, 325 F.3d at 962 ("[The appellant] could have—and should have—appealed and sought stays of any subsequent orders approving the sale of estate assets."). By extension, neither can we. *Id.* at 960 ("A court of appeals' jurisdiction over a district court's review of a bankruptcy court order can only be based on a proper exercise of the district court's jurisdiction." (citation omitted)).

Second, just as § 363(m) prevents us from letting Mr. Schwab challenge the sale of the property if he could succeed in reviving his disallowed claim on appeal, it also prevents us from letting him upset the expectations from the sale that River West's other creditors had when deciding to support the sale. Courts take a dim view of arguments that attempt to craft any

sort of "end run around the appeal and stay requirements of § 363(m)." *Id.* at 962. *Accord In re Sax*, 796 F.2d at 998 ("Creditors, who may lose money under the rules now, stand to lose even more if we allow the proposed exception to the stay requirement. The courts should follow statutory provisions precisely; to look for exceptions would increase litigation, which would seriously undermine the finality and certainty imposed by § 363(m)."). Accordingly, courts hearing appeals from sale orders—which Mr. Schwab did not appeal either—reject attempts to attack the distribution of proceeds if no stay was obtained. *See, e.g.*, *BDC Fin., L.L.C. v. Metaldyne Corp. (In re Metaldyne Corp.)*, 421 B.R. 620, 626 (S.D.N.Y. 2009) ("Black Diamond seeks to escape the limitations imposed by § 363(m) by arguing that it does not challenge the sale itself, but the allocation of the assets of the sale, which delivered Metaldyne's assets to MDI free and clear of liens. This is a specious distinction." (citation omitted)).[1]

---

[1] The narrow exception to this rule that we have previously recognized occurs where, unlike here, the proceeds from the sale of partially exempt property have not yet been distributed to creditors and an exemption attaches to the sale proceeds. *See In re Lloyd*, 37 F.3d 271, 273 (7th Cir. 1994) ("But Lloyd's inability to recover the land sold does not render the entire appeal [from a sale order] moot because the Wisconsin homestead exemption applies to and follows the proceeds of the sale." (citation omitted)).

## III.

### CONCLUSION

Having failed to obtain a stay of the sale of the property at issue and having appealed only the disallowance of his claim, Mr. Schwab's appeal is moot and is, therefore, DISMISSED.