| NONPRECEDENTIAL DISPOSITION |
|---|
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 23, 2015[*]
Decided March 3, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1686

| | |
|---|---|
| BRIAN J. KELLY, | Appeal from the United States District |
| *Debtor-Appellant,* | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 13-cv-633-bbc |
| | |
| PETER F. HERRELL, | Barbara B. Crabb, |
| *Trustee-Appellee.* | *Judge.* |

## O R D E R

Brian Kelly appeals from the decision of the district court rejecting his challenges to several rulings by the bankruptcy court supervising his Chapter 7 case. Kelly principally argues that one of the parties who forced him into involuntary bankruptcy

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

did so through fraudulent means, and thus, says Kelly, the bankruptcy court never acquired subject-matter jurisdiction over the case. Kelly's father attempted to add his name to his son's appeal and apparently seeks to make the same argument. We conclude that Kelly's father is not a party to this appeal, and that we lack appellate jurisdiction to review the district court's decision at this time.

This litigation began in 2002 when three purported creditors filed an involuntary Chapter 7 bankruptcy petition against Kelly. One of those petitioners, "Midwest Financial," asserted that Kelly owed $53 on a debt that Midwest had purchased from Kelly's dentist. The petition named Bernard Seidling[1] as Midwest's representative; Seidling at that time was married to the named representative of another petitioner, "C&A Investments." Kelly owed C&A $22,000 from a deficiency judgment obtained in a Wisconsin foreclosure action.

An involuntary bankruptcy typically must be initiated by at least three creditors whose debts are not disputed. See 11 U.S.C. § 303(b)(1). But if the debtor has fewer than 12 creditors holding noncontingent debts, a single petitioner whose claim exceeds $15,325 is sufficient. See *id.* § 303(b)(2). But in either situation, creditors who acquire claims "for the purpose of commencing" a Chapter 7 case are not qualified to petition for commencement of an involuntary bankruptcy. See FED. R. BANKR. P. 1003(a); *In re Am. Res. & Energy, LLC*, 513 B.R. 371, 390–91 (Bankr. D. Minn. 2014); *In re Pacific Rollforming, LLC*, 415 B.R. 750, 753–54 (Bankr. N.D. Cal. 2009); *In re Kidwell*, 158 B.R. 203, 211–12 (Bankr. E.D. Cal. 1993). Contending that Midwest had acquired his dentist's debt solely to become the third petitioner and that the debt was subject to a *bona fide* dispute, Kelly moved to dismiss the Chapter 7 case on that ground. Kelly also claimed that his debt to C&A was subject to a *bona fide* dispute because he was appealing the entry of the deficiency judgment in the Wisconsin appellate court. That appeal later was dismissed. Midwest, through Seidling, denied acquiring the $53 debt for the purpose of being a third petitioning creditor. Kelly, who was *pro se*, did not attend the bankruptcy court's

---

[1] Seidling was convicted in 2013 of multiple counts of mail fraud, 18 U.S.C. § 1341, after he filed 25 bogus small-claims actions in Wisconsin from 2003 to 2009. Seidling had falsely certified to the courts that he served the defendants named in his suits, all of which involved fictitious claims brought in the names of fake businesses. He had obtained default judgments that he tried to execute through garnishment or similar means. "MW Enterprises" and "Midwest, LP" are the names of two of these sham businesses. Seidling was sentenced to 36 months' imprisonment, and we affirmed his convictions and sentence. See *United States v. Seidling*, 737 F.3d 1155 (7th Cir. 2013).

hearing on his motion. The court denied that motion, but Kelly did not seek to appeal that ruling to the district court. See 28 U.S.C. § 158(a); FED. R. BANKR. P. 8002–8004. After losing his motion to dismiss, Kelly failed to respond to the involuntary Chapter 7 petition, and so the bankruptcy court appointed a trustee and allowed the case to proceed.

The bankruptcy case dragged on for the next ten years, but little that happened is relevant to the present appeal. Eventually in January 2012 the bankruptcy court approved the trustee's proposal to settle the matter by having Kelly's stepmother pay his debts as well as the trustee's fees. See FED. R. BANKR. P. 9019. But Kelly's stepmother never paid, and so in November 2012 the bankruptcy judge voided the settlement and approved the trustee's application to hire an auctioneer to dispose of farmland owned by Kelly. See 11 U.S.C. § 327. A few months later, the assigned bankruptcy judge recused herself at Kelly's request. The case was then transferred to the only other bankruptcy judge in the district. In June 2013 the new bankruptcy judge denied Kelly's requests to vacate the transfer and to stop the planned auction of his farm.

At that point Kelly (with his father) appealed to the district court. He challenged the bankruptcy court's jurisdiction over the Chapter 7 petition, its approval of the voided January 2012 settlement, and seven miscellaneous rulings. Kelly also asserted that the bankruptcy judge erred by not requiring the trustee to file unspecified schedules, and he asked the district judge to withdraw the reference of his Chapter 7 case from the bankruptcy court. See 28 U.S.C. § 157(d). Lastly, he repeated his contention, made ten years earlier in his 2003 motion to dismiss, that the involuntary Chapter 7 case was a sham because "Midwest Financial" was not a legitimate creditor.

The district court dismissed the appeal. It found first that Kelly's effort to challenge to the legitimacy of the involuntary petition was untimely because his motion to dismiss had been denied a decade ago. As for the approval of the settlement and the bankruptcy court's other miscellaneous rulings, the court ruled that the notice of appeal was timely only as to four orders, all of them concerning the impending auction or the transfer of the case to a different bankruptcy judge. The court decided, however, that those four orders were all interlocutory, and as a matter of discretion it declined to review them. See 28 U.S.C. § 158(a)(3). Finally, the court concluded that Kelly had not developed any argument supporting the remaining issues he identified (concerning the trustee's schedules and the request for withdrawal of the reference). Kelly filed a notice of appeal, which his father also signed.

As a preliminary matter, we should determine who is an appropriate appellant. Kelly's father, Paul Kelly (who has a law degree but was disbarred in Wisconsin in 1982), not only signed the notice of appeal but also his son's appellate briefs. Yet as far as we can tell, the senior Kelly does not have a cognizable interest in the Chapter 7 estate. He calls himself a creditor, but that characterization is questionable. He did not file a claim against the estate, nor is he identified as a creditor on the Claims Register. Neither can we find anything in the record from Brian Kelly indicating that his father was one of his creditors at the time the Chapter 7 case was filed. Paul Kelly first surfaced in December 2011—nine years after the involuntary petition was filed—when he objected to the settlement with the trustee. At the hearing in 2013 on the debtor's motion to vacate the transfer to a different bankruptcy judge, the senior Kelly participated in the conference, "appearing personally." The bankruptcy and district courts seem to have tolerated this shadowing of his son, but Kelly's father was not legitimately involved in the bankruptcy case and is not a proper appellant. In addition to these serious flaws, Paul Kelly has not explained how the district court's decision or any ruling of the bankruptcy court injured him in a way that we can correct. See *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); *In re Holly Marine Towing, Inc.*, 669 F.3d 796, 800 (7th Cir. 2012); *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995). We thus conclude that he is not a party to this appeal, and we have accordingly removed his name from the caption.

Next we must resolve whether we have jurisdiction over this appeal. The trustee suggests that we do not. In bankruptcy matters we are authorized to review appeals from final decisions of a district court, see 28 U.S.C. § 158(d)(1); *In re Rockford Prods. Corp.*, 741 F.3d 730, 733 (7th Cir. 2013), and a district court's decision is not final if the underlying bankruptcy court order is not final, see *In re Ross-Tousey*, 549 F.3d 1148, 1152 (7th Cir. 2008), *abrogated on other grounds by Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61 (2011); *Caldwell-Baker Co. v. Parsons*, 392 F.3d 886, 887–88 (7th Cir. 2004); *In re Szekely*, 936 F.2d 897, 899 (7th Cir. 1991); *In re Bullard*, 752 F.3d 483, 485–86 (1st Cir. 2014). None of the district court's rulings is a final decision over which we have jurisdiction. Of the several bankruptcy court orders that Kelly actually challenged in the district court, the only ones for which he filed a timely notice of appeal were the interlocutory orders concerning the approval of the trustee's application to hire an auctioneer and the transfer to a new bankruptcy judge. None of those four orders finally disposed of a matter that would be a standalone suit outside of the bankruptcy; to the contrary, here, the district court's dismissal of those challenges caused the bankruptcy proceedings to continue. See *In re Comdisco, Inc.*, 538 F.3d 647, 650–51 (7th Cir. 2008); *Zedan v. Habash*, 529 F.3d 398, 402 (7th Cir. 2008). Neither was the district court's decision on Kelly's request to withdraw the reference a final decision appealable to this court. See *Caldwell-Baker Co.*, 392 F.3d at 888;

*Matter of Lieb*, 915 F.2d 180, 184 (5th Cir. 1990). It appears, therefore, that we lack jurisdiction to review the district court's dismissal of Kelly's appeal.

Kelly believes that he can escape that conclusion by going back to the beginning of the litigation. From the start, he says, the bankruptcy court lacked jurisdiction over the Chapter 7 case because Seidling fraudulently represented in the involuntary petition that Midwest was a qualified petitioner. Kelly contends that Seidling not only lied in telling the bankruptcy court that Midwest had acquired his dentist's $53 debt for a purpose other than forcing Kelly into bankruptcy, but even lied about acquiring the debt. His dentist, Kelly insists, never assigned the $53 debt to Midwest or Seidling. Kelly seems to be correct on that fact: he points to a decision from the bankruptcy court in the Southern District of Florida, where Bernard Seidling is the debtor in a Chapter 7 case in which Kelly's father filed a claim. In that proceeding Seidling did not dispute the senior Kelly's assertion that Midwest had purchased the dental debt "for the sole purpose of filing an involuntary bankruptcy" against his son. Kelly also obtained an affidavit from the dentist denying that he assigned the $53 debt to Seidling or Midwest. This affidavit and the litigation position taken by Kelly's father in the Florida bankruptcy are not entirely consistent, but both point to the conclusion that Seidling lied about his status as a creditor qualified to force Kelly into bankruptcy.

If this were truly a question of subject-matter jurisdiction, it would properly be before us. See *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008). But the filing requirements in 11 U.S.C. § 303 are not jurisdictional, and a case may proceed even if the petitioning creditors later are deemed ineligible. See *In re Zarnel*, 619 F.3d 156, 167, 169 (2d Cir. 2010); *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1043 (11th Cir. 2008); *In re Marlar*, 432 F.3d 813, 814–15 (8th Cir. 2005); *In re Rubin*, 769 F.2d 611, 614–15 (9th Cir. 1985). Neither are the procedural limitations in the Bankruptcy Rules jurisdictional. See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271–72 (2010); *Kontrick*, 540 U.S. at 453–54, 456. Even if Midwest were not a qualified petitioner under Rule 1003 or if the three claiming petitioners did not satisfy § 303, the bankruptcy court's jurisdiction would be secure.

Like the district court, we instead understand Kelly to be challenging the denial of his motion to dismiss. A bankruptcy court's denial of a motion to dismiss typically is not a final order, see *In re Vlasek*, 325 F.3d 955, 960–61 (7th Cir. 2003); *In re Donovan*, 532 F.3d 1134, 1136–37 (11th Cir. 2008); *In re Phillips*, 844 F.2d 230, 235 (5th Cir. 1988), but we need not decide whether the bankruptcy court's order in this case could be considered final. If it was a final order, Kelly missed his 14-day window to appeal it, see FED. R. BANKR.

P. 8002(a), 8003(a); *In re Indu Craft, Inc.*, 749 F.3d 107, 114–15 (2d Cir. 2014); *In re Caterbone*, 640 F.3d 108, 111–13 (3d Cir. 2011); *In re Latture*, 605 F.3d 830, 836–37 (10th Cir. 2010), and if it was not a final order, Kelly can challenge it in an appeal when the bankruptcy case finally ends for good, see *In re Salem*, 465 F.3d 767, 774–75 (7th Cir. 2006); *In re Vlasek*, 325 F.3d at 960–61. Either way, the denial of Kelly's motion to dismiss is not reviewable now by this court.

Finally, we observe that Kelly would face another obstacle to his assertion that Seidling's deceit nullified the Chapter 7 petition. He is correct that if Seidling acquired the claim "for the purpose of commencing" a Chapter 7 case, Seidling was not a qualified petitioner. See FED. R. BANKR. P. 1003(a). But that debt was not the only one at stake. Even if Midwest purchased *its* claim solely for the purpose of filing the involuntary petition, it appears that C&A alone could have initiated the involuntary proceeding. As we noted previously, § 303(b)(2) allows commencement of an involuntary bankruptcy by a single petitioner whose claim is not subject to a bona fide dispute and is greater than $15,325, if the debtor has fewer than 12 creditors. Kelly has never asserted in the course of this protracted litigation that he has 12 or more creditors, thus requiring three petitioners. See 11 U.S.C. § 303(b)(2). And C&A holds an undisputed $22,000 deficiency judgment against Kelly that was entered in 2002. See *C & A Invs. v. Kelly*, 330 Wis. 2d 223 (Wis. Ct. App. 2010); *C & A Invs. v. Kelly*, No. 2001CV673 (Eau Claire County Circuit Ct. Nov. 19, 2002).

This case has consumed far more resources—judicial and otherwise—than it should have. We trust that the bankruptcy court will now be in a position to resolve it expeditiously. This appeal is DISMISSED.