┌─────────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 30, 2019[*]
Decided August 2, 2019

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-2539

| | |
|---|---|
| BRIAN J. KELLY, <br>     *Debtor-Appellant*, | Appeal from the United States District <br> Court for the Western District of Wisconsin. |
| *v.* | No. 17-cv-793-bbc |
| PETER F. HERRELL, <br>     *Trustee-Appellee*. | Barbara B. Crabb, <br> *Judge*. |

**O R D E R**

Brian Kelly appeals an order approving the sale of his bankruptcy estate's only asset—his family farm—subject to all liens and encumbrances, including his parents' purported ownership interests. The court-appointed trustee for Kelly's estate had originally asked the bankruptcy court to sell the property free and clear of those interests; therefore, Kelly contends, he received inadequate notice of the possibility of the ordered result, in violation of the Due Process Clause of the Fifth Amendment. The district court rejected this challenge, and we affirm that judgment.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Kelly's involuntary Chapter 7 bankruptcy proceedings began in 2002 and are described in our earlier decision in this case. *Kelly v. Herrell*, 602 F. App'x 642, 644 (7th Cir. 2015). In Kelly's last appeal, he alleged that a fraudster, Bernard Seidling, had forced him into bankruptcy through debts he had purchased or manufactured through sham entities. *Id.* at 644. We dismissed that appeal for lack of an appealable final order. *Id.* at 647. In doing so, we expressed hope that the decade-old bankruptcy case would be finished expeditiously. *Id.*

Another two years passed before the trustee moved to sell Kelly's farm to the Jerry Johnson Revocable Trust for $44,000. The trustee asked the bankruptcy court to authorize the sale free and clear of all interests except tax liens under 11 U.S.C. § 363(f) and to certify that Jerry Johnson was a good-faith purchaser under § 363(m), thereby immunizing the sale from challenge.

Though Kelly has had apparent title in the farm since 1990, his father, whom we will refer to as Paul, contends that he owns the farm under Wisconsin law through various theories, including adverse possession. Kelly's stepmother, Patricia, has also claimed interests in the farm through a mortgage owned by her Red Cedar Roth Escrow Trust. Kelly executed the so-called "Red Cedar Mortgage" in 1998, though it was not recorded until 2006. In 2002, he transferred the farm to Red Cedar (which remains on the deed, according to the trustee's title search). But that transfer was set aside as fraudulent in a state-court judgment voiding any "mortgages, liens, encumbrances or any other clouds on the title entered on April 18, 2002, and into the future" by Kelly, Patricia, Red Cedar, and others. This judgment does not mention Paul, and no party can confirm whether it vitiated the mortgage, which was not yet recorded in 2002.

Based on Paul's purported ownership of the land and their insistence that the bankruptcy proceeding was fraudulent, Kelly and Paul objected to the sale. They also accused the Jerry Johnson Trust of being another of Seidling's sham entities. The United States Trustee appeared to think that this latter assertion could have some merit. He filed his own objection noting that Jerry Johnson was conducting the sale through a lawyer who represented C & A Investments—a known Seidling entity and one of Kelly's bankruptcy creditors, *see Kelly*, 602 F. App'x at 644. Moreover, the court-appointed trustee had not disclosed any side deals, though it was later revealed that he had promised, as part of the sale, to withdraw a motion seeking $35,000 from C & A (an entity ostensibly unrelated to Jerry Johnson). Given these concerns and the disputed ownership, the U.S. Trustee proposed that the best way to resolve the bankruptcy

expeditiously would be to sell the land subject to Paul and Patricia's purported interests and to have the Kellys and Jerry Johnson sort out their claims in state court instead.

The bankruptcy court agreed with the U.S. Trustee and approved the sale of the farm subject to all liens, claims, encumbrances, and interests. The order stated that the sale was approved "pursuant to section 363(b) of the Bankruptcy code, **NOT** pursuant to section 363(f)." The bankruptcy court also refused to stay the sale during the time available to appeal, *see* FED. R. BANKR. P. 6004(h), though appeal Kelly did.

Before the district court, Kelly argued that the order to sell his farm under § 363(b) was entered without notice because the trustee had moved for a sale under § 363(f). The district court affirmed the bankruptcy court's order, concluding that subsections (b) and (f) were not mutually exclusive. Kelly had notice that the court could authorize a sale, and that was enough. Though the district court and this court denied the Kellys' motions to stay the sale, the farm still has not been sold. In response to the U.S. Trustee's motion to abandon the farm as estate property, C & A confirmed that Jerry Johnson will close the sale if this court affirms the judgment.

As in Kelly's previous appeal, we run into a preliminary problem: Paul Kelly has signed the notice of appeal, pronouncing himself a "creditor" and "interested party," though he appeared as neither in the bankruptcy court. We rejected this assertion in Kelly's last appeal, *Kelly*, 602 F. App'x at 645, and nothing has changed. We will again strike him from the caption. The district court gave Paul the benefit of the doubt because the bankruptcy court had opined that he did not have title to the farm when summarizing his arguments. But those statements were not essential to the judgment and thus not preclusive. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *In re Estate of Rille*, 728 N.W.2d 693, 702 (Wis. 2007). And a non-party, like Paul, may appeal without intervening only if an order "concludes the rights of the affected person, who cannot litigate the issue in some other forum." *SEC v. Enter. Tr. Co.*, 559 F.3d 649, 651 (7th Cir. 2009). The bankruptcy court here did the opposite: it *refused* to adjudicate Paul's rights and directed him to state court.

With only one appellant, Brian Kelly, we can now move on to his argument. Kelly maintains that the bankruptcy court deprived him of property without due process of law when it sold his farm subject to encumbrances, rather than free and clear of them under § 363(f). In Kelly's view, the court changed course—from § 363(f) to § 363(b)—without notice; he contends that the bankruptcy court was constitutionally obligated to request briefing on subsection (b) before approving the sale.

Kelly's unstated premise is that the Fifth Amendment requires a federal court to notify a litigant of the statutory authority for any action it intends to take. But even if that were true, his argument fails for at least three reasons. First, as the district court explained, 11 U.S.C. § 363(f) and (b) are not mutually exclusive. Subsection (f) provides that "[t]he trustee may sell property under subsection (b) … of this section free and clear of any interest" under certain conditions. Thus, property of the estate is still sold under subsection (b) when subsection (f)'s conditions to sell it free and clear are met. Notice as to subsection (f) was, therefore, necessarily also notice as to subsection (b).

Second, Kelly received notice that the court was considering selling the property subject to any interests because the U.S. Trustee asked for the very relief that the bankruptcy court ordered. The court was not obligated to inform Kelly that it was considering a party's on-the-record argument. If Kelly believed he needed the court's permission to file a response to the U.S. Trustee's objection, he could have asked for it.

Third, Kelly cannot demonstrate any prejudice. Unless later augmented, the bankruptcy estate contains exactly the property that the debtor has at commencement, no more, no less. *See* 11 U.S.C. § 541(a)(1); *In re Thorpe*, 881 F.3d 536, 539 (7th Cir. 2018). As the bankruptcy court explained, "a trustee's sale involves a sale of whatever interest a debtor has in the asset" with "no warranties of assurances of good title associated with the sale." If the court had ordered the sale under § 363(f), as Kelly knew it might, Kelly, as the debtor, still would have lost his entire interest in the farm. Yet Kelly does not challenge the validity of the sale, only the purported lack of notice. Patricia and Paul were likewise not prejudiced by the bankruptcy court's decision *not* to extinguish their interests, if any, in the farm. They can still assert their claims to the land in state court, without limiting their recoveries to the assets of the estate. And the estate now has fewer claims to pay, leaving more potential residue for Kelly.

One final matter: the private trustee asks us to modify the bankruptcy court's order so that the sale is free and clear of interests under § 363(f). He provides no argument or authority in support of this request. Though we may affirm a judgment on a ground not passed on by the lower courts, "[w]e may not grant additional relief unless the appellee files a cross-appeal," *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 970 (7th Cir. 2016), and no one—not the trustee nor C & A nor Jerry Johnson—has done so.

AFFIRMED